UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

                                                      Chapter 11

CAIRNS & ASSOCIATES, INC.                 Case No. 05-10220 (BRL)

                          Debtor.
-------------------------------------------------------------X
CAIRNS & ASSOCIATES, INC.,

                          Plaintiff

     -against-                                       Adv. Pro. No. 05-1486

CONOPCO, INC.

                          Defendants.
-------------------------------------------------------------X


APPEARANCES:

HERRICK, FEINSTEIN LLP
Attorneys for Defendant
2 Park Avenue
New York, New York 10016
(212) 592-1400
By:    William R. Fried, Esq.
        Matthew S. Hawkins, Esq.


COLE, SCHOTZ, MEISEL, FORMAN & LEONARD
Co-Counsel for the Defendant
460 Park Avenue, 8th Floor
New York, New York 10022
(212) 752-8000
By:    Joshua Angel, Esq.


SEIDEN WAYNE LLC
Heron Tower
70 East 55th Street
New York, NY 10022
By:    David W. Phillips, Esq.

Before:    Burton R. Lifland
            United States Bankruptcy Judge

Before the Court is the motion (the "Summary Judgment Motion") of Defendant Conopco, Inc. ("Unilever") for an Order Granting Partial Summary Judgment and dismissing the Thirteenth Count of Cairns & Associates, Inc.'s ("Cairns" or "Debtor") Amended Complaint.

The Debtor, a public relations and marketing agency established by Annemarie Cairns ("Ms. Cairns") in 1982, filed a chapter 11 petition on January 13, 2005. On May 2, 2005, Cairns commenced this adversary proceeding against Unilever, a consumer products company. On June 21, 2005, Unilever filed an answer and counterclaims. Pursuant to a stipulation, Cairns filed an Amended Complaint on August 9, 2005 and on August 19, 2005, Unilever filed an answer to the amended complaint and counterclaims. In November 2005, this Court referred the matter to mediation. After five months of unsuccessful mediation, this Court ordered the parties to complete discovery by September 1, 2006. In July, Cairns retained special counsel to litigate the adversary proceeding – the third law firm retained by the Debtor. A trial date was scheduled for September 18, 2006. On August 11, 2006, Unilever filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "Rules"). In response, on August 23, 2006, Cairns filed an objection to the motion and a cross-motion to once again amend the complaint, more than a year after the prior amendment. This Court denied the Plaintiff's motion for judgment on the pleadings and denied Cairns' motion to amend the complaint. *See* Extract of Bench Ruling Denying Motion to Amend Complaint and Motion for Judgment on the Pleadings, Case No. 05-1486, Docket # 40.

2

BACKGROUND

For a number of years, Debtor provided public relations services to Unilever brands, including Thermasilk, Finesse, Snuggle, Pond's and Vaseline Intensive Care Lotion ("VICL"). In April 2002, Cairns and Unilever executed a transition agreement (the "Transition Agreement") concluding Cairns' representation of Thermasilk and Finesse. Pursuant to the Transition Agreement, the parties prepared a joint media statement regarding the end of Cairns' representation of the Finesse and Thermasilk brands. Notwithstanding the end of Debtor's representation of the Finesse and Thermasilk hair care brands, Debtor continued to represent the Snuggle, Pond's and VICL brands.

On April 8, 2004, Cairns resigned its representation of Snuggle.[1] There was no agreement to issue a press release relating to the Snuggle resignation. Subsequent to Cairns' resignation of the Snuggle public relations business, Unilever put the VICL and Pond's public relations business up for bid to a number of public relations firms. Cairns did not bid on the business, and ultimately, Unilever ended the relationship with Cairns. There was no agreement to issue a press release announcing the VICL and Pond's termination.[2] As will be seen further, this lack of a press release or explanatory public communication forms the basis for Debtor's claim of defamation by inference, i.e. silence connotes an actionable pejoration.

---

[1] Cairns alleges it was "forced" to resign the Snuggle campaign because of the terms that Unilever proposed for a continued relationship. Unilever's letter to Ms. Cairns dated April 2, 2004 confirmed a retainer amount and contained various terms for continuing the relationship between Unilever and Cairns. Ms. Cairns never signed the letter and shortly thereafter resigned from the Snuggle account.

[2] Even though Unilever was not required to issue a press release relating to the termination of the business relationship with Cairns, Unilever submitted language to Cairns for a media statement. Cairns, however, did not respond to or even acknowledge Unilever's suggested language. See Deposition of Stuart Friedel, at pg 31.

THIRTEENTH CAUSE OF ACTION

The Amended Complaint alleges that after Unilever terminated its business relationship with Cairns, the health and beauty care industry was rife with rumors regarding Cairns "firing" and, as a result, Cairns lost its ability to compete in this market and obtain clients to replace the Ponds and VICL accounts. Amended Compl. at ¶ 102. Unilever moved for summary judgment on the basis that the Amended Complaint does not state a valid claim for defamation and that Ms. Cairns admitted in her deposition that there were no defamatory statements.[3] In the Cairns Opposition, Cairns concedes that Count Thirteen is not based on any statements, rather it is based on actions and their failure to issue a press release. "Unilever's failure to release a proper statement spoke volumes to the industry about Cairns, and is the defamatory statement for which Cairns seeks compensation." Plaintiffs Memorandum of Law in Opposition to the Summary Judgment Motion (Cairns Opposition), at 2. The Thirteenth Count also contends (for the first time before this

---

[3] First, Ms. Cairns testified at her deposition that after Unilever terminated the Debtor, Unilever contacted a printing vendor with whom Debtor had contracted for an upcoming Unilever event, informed the printing vendor that Debtor was no longer engaged by Unilever and that Unilever would cover any unpaid amounts due relating to the project. Ms. Cairns testified at the deposition that the statements made to the printing vendor were not false.

Second, Ms. Cairns testified Cairns' staff received phone calls from executive recruiters who had heard the news of Cairns' termination and that magazine editors became aware of Cairns' termination. Ms. Cairns testified that the "rumors" that reached these entities were limited to the fact that Unilever had terminated Cairns, and could not identify any statements made by Unilever which resulted in "rumors" in the industry.

Third, Ms. Cairns testified that Unilever defamed Cairns when in April 2004 Stacie Bright, an employee of Unilever, and Jackie Widrow, who had worked for Debtor, had a conversation at the Self Magazine cocktail party. According to Ms. Cairns, Stacie Bright inquired about the number of clients Cairns had and she commented that Cairns "had no business" resigning from Snuggle. Ms. Cairns again confirmed that these statements made by Stacie Bright to Jackie Widrow were not false.

Fourth, Ms. Cairns admitted that statements made by Ms. Bright at the Self Magazine party that Ms. Cairns had problems or issues were statements of opinion.

4

Court) that Unilever had a duty, "akin to a fiduciary duty, to take care not to so destroy the business at the end of the [Agency of Record] relationship." Cairns Opposition, at 12.

SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7056, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.,* 449 F.3d 377, 381 (2d Cir.2006) *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998). Summary judgment is appropriate if, in light of the evidence presented, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). On a summary judgment motion, the moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 249 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *United States v. Certain Funds on Deposit in Scudder Tax Free Inv. Account No. 2505103*, 998 F.2d 129, 131 (2d Cir. 1993). Once the movant has made its showing, the burden of production shifts to the non-movant who must, "go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, establish that there is a specific and genuine issue of material fact

5

warranting a trial." *Celotex*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(c)).  The non-movant cannot defeat a summary judgment motion by casting some metaphysical doubt on the moving party's assertions, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.  *See Matsushita*, 475 U.S. at 587.

DEFAMATION LAW

Under New York law, plaintiff must prove four elements to prevail on a cause of action for defamation:  (1) a false and defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) fault on the part of the defendant; and (4) resulting in injury to the plaintiff.  *Deutsche Asset Mgmt., Inc. v. Callaghan*, No. 01 Civ. 4426 (CBM), 2004 U.S. Dist. LEXIS 5945, at *39 (S.D.N.Y. April 7, 2004).  In New York, when a plaintiff alleges a cause of action arising from deprivation of professional opportunities because of alleged injury to its professional reputation, the cause of action sounds in defamation.  *See Bisk v. Soko Co.*, Case No. 98-CV-184, 2000 U.S. Dist. LEXIS 9789, at *20-21 (N.D.N.Y. July 7, 2000).  The Summary Judgment Motion establishes that there is no genuine issue of fact relating to Count Thirteen.  Cairns does not dispute that there were no written or oral defamatory statements made, rather Cairns relies only on its contention that failure to issue a press release is sufficient grounds for its defamation claim.  Cairns has not submitted to this Court any pleading, deposition or exhibit giving any basis for this Court to deny the Summary Judgment Motion.

6

In this case, the Debtor contends that without any accompanying words or actions, Unilever's termination of the business relationship was a defamatory statement. While it is true, as the Debtors state in the Cairns Opposition, that defamation may be embodied in physical form, the cases finding a physical act of defamation can easily be distinguished from the case before this Court. *See Schultz v. Frankfort Marine, Accident & Plate Glass Insurance Company*, 152 Wis. 537 (1913) (involving shadowing a person); *Gardella v. Log Cabin Products Co.*, 89 F.2d 891 (2d Cir. 1937) (involving impersonation).

Unilever cites to relevant caselaw supporting its contention that discharge alone may not be the basis for defamation claims. In *Nichols v. Item Publishers*, the New York Court of Appeals ruled that the mere statement of discharge from employment does not constitute libel, but the court added that publication of a discharge would be defamatory if "the publication contains an insinuation that the discharge was for some misconduct." *Nichols v. Item Publishers,* 309 N.Y. 596, 601 (1956). The mere fact of one's removal from office carries no imputation of dishonesty or lack of professional capacity. *Rossiter v. New York Press Co.*, 141 App. Div. 339, 344 (1910). It is only when the publication contains an insinuation that the dismissal was for some misconduct that it becomes defamatory. (*See Rossiter v. New York Press Co.*, 141 App. Div. at 344; *Ramsdell v. Pennsylvania R. R. Co*., 79 N. J. L. 379.)  In this case Debtor does not allege that any false statements were published, and there was no statement insinuating wrongdoing on the part of Cairns.  Courts have specifically held that failure to make a statement cannot be the basis for a cause of action for defamation. *See Kwan v. Schlein*, 441 F.Supp.2d 491, 505 (S.D.N.Y. 2006) ("That Schlein [defendant] failed to credit her for allegedly co-authoring "Find it Online" is not a statement; nor does it constitute an omission that

7

renders a statement about Kwan false."); *Denman v. Franks*, 1976 WL 1288, at * 1(S.D.N.Y. April 22, 1976) (claim that a book is libelous because it does not mention the plaintiff not sufficient to defeat motion to dismiss).

Cairns cites no New York authority supporting its contention that termination alone is sufficient to establish defamation, and in fact, caselaw cited by the Debtor for the proposition that an employee may maintain an action for defamation by virtue of the dismissal are inapposite.[4] For example, Debtor cites the following: *Tumbarella v. Kroger Co.*, 85 Mich. App. 482 (Mich. App. 1978) (finding issue of fact related to libel cause of action where employer published letter disclosing that the employee was terminated and accusing the employee of theft); *Schwartz v. Leaseametric Inc.*, 224 N.J. Super. 21 (App. Div. 1988) (finding employers statements made prior to dismissal do not rise to level of defamation and affirming the lower court's grant of summary judgment motion); *Gowin v. Hazen Memorial Hospital Assoc.*, 311 N.W. 2d 554 (N.D. 1981) (remanding case for further proceedings where employee alleged false and unprivileged publication, without discussing merits of the allegation). In this case, Debtor does not allege that Unilever published any false statements in connection with the termination of the business relationship with Cairns. The "beef"[5] is that *there was no statement at all*.

---

[4] Contrary to the facts of the case before this Court, the caselaw cited in the Cairns Opposition involved statements in addition to the termination of employment and therefore does not support Debtor's position that Unilever's failure to issue a press release gave raise to a claim for defamation.

[5] From "where's the beef?" an expression from the advertising media that has become an all-purpose phrase questioning the substance of an idea, event or product. *See* http://en.wikipedia.org/wiki/Where's_the_beef%3F (1980s Wendy's International Inc. advertising campaign).

8

The pleadings, depositions and exhibits submitted to this Court clearly establish that the Debtor has no basis for its cause of action in defamation. There were no defamatory statements made and failure to issue a press release in this case is not a sufficient basis for defamation. The Debtor does not establish publication or fault of Unilever. Accordingly, as to damages, this Court sees no basis to consider the alleged defamation damages and new "expert" report submitted in the Cairns Opposition, as they are both irrelevant and untimely.

FIDUCIARY DUTY

For the first time in the Cairns Opposition, the Debtor alleges that because of the nature of the relationship between Cairns and Unilever, that Unilever owed Cairns a fiduciary duty to protect Cairns' business. Unilever points out that the Debtor attempted to insert a cause of action for fiduciary duty in its prior proposed second amended complaint, but this Court declined to grant the Debtor leave to file the complaint and therefore it would be improper to insert the cause of action at this point in time. The Court agrees. Nonetheless, Cairns has no basis for its claim for fiduciary duty. Although a fiduciary relationship may be found by a court in the absence of a written agreement, cases cited by Cairns in its Opposition do not sustain their contention that the relationship between Cairns and Unilever support such a finding here. For example, *see Weiner v. Lazard Freres & Co.,* 241 A.D. 2d 114, 123 (1st Dep't 1998) (denying motion to dismiss claim for fiduciary duty when plaintiffs alleged that the alleged fiduciary had acted on their behalf in assuming negotiations with third parties, and that they had relied upon the alleged fiduciary specifically because of his firm's expertise and reputation, because of the alleged fiduciary's alleged "inside connection" with a highly placed third party

9

executive and because the third party apparently preferred to deal with plaintiffs through the alleged fiduciary's firm rather than directly with plaintiffs); *Societe Nationale D'Exploitation v. Salomon Bros. Int'l*, 1998 N.Y. Misc. LEXIS 219, at *3 (Sup. Ct. N.Y. Cty. Feb. 9, 1998), aff'd 251 A.D. 2d 137 (1st Dep't 1998) (no fiduciary duty existed where parties were both sophisticated). Cairns goes to great length to confirm that it was an established, well-regarded and acclaimed outfit in its industry. This does not paint the picture of an unsophisticated business, easily induced or dominated. Relative size of the businesses is not determinative here, if that were the case, then Unilever would owe a fiduciary duty to almost every vendor it comes into contact with. The Debtor cites no relevant caselaw to support its contention that an agency of record relationship establishes a fiduciary duty.

**Conclusion**

For the foregoing reasons, the cause of action for defamation is dismissed and Unilever's motion for summary judgment is granted. The matter shall proceed to trial on the remaining causes of action on February 5, 2007.

IT IS SO ORDERED.

Dated: New York, New York
November 14, 2006

                                                    /s/ Hon. Burton R. Lifland
                                                  United States Bankruptcy Judge